IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EFRAIN RIVERIA, | : |
| Petitioner, | : |
| v. | : Civil Action No. 19-289-CFC |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents.[1] | : |

Efrain Riveria. *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

January 31, 2022
Wilmington, Delaware

---

[1] Warden Robert May has replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Efrain Riveria's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (D.I. 1) The State filed an Answer in opposition. (D.I. 13) For the reasons discussed, the Court will deny the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I.     **BACKGROUND**

> In August 2009, the 23 year-old victim and her 3 month-old son were living with her uncle and his family in the City of Wilmington. On August 14, 2009, several friends of the victim's uncle, including [Petitioner], were at his house. [Petitioner] had been drinking beer and appeared intoxicated. [Petitioner] left the house around 11:00 p.m., but returned a few minutes later and asked to spend the night. The victim's uncle refused to allow [Petitioner] to stay, escorting [Petitioner] to the door and locking the door behind him.
>
> In the early morning hours of August 15, 2009, the victim, who was sleeping in her bed with her baby beside her, was awakened by [Petitioner], who was standing over her with a knife in his hand. [Petitioner], wearing only a shirt and socks, told the victim, in crude fashion, that he wanted to have sex with her. [Petitioner] told the victim that, if she screamed, he would harm her and the baby. He slapped her face and put his hand over her mouth. [Petitioner] attempted to have sex with the victim, but failed to fully penetrate her. Ultimately, he ejaculated on the victim's vagina. [Petitioner] then left the room. The victim screamed that she had been raped. She awakened her uncle, who called 911. The victim's uncle observed that the kitchen window was open and that [Petitioner]'s pants and shoes were on the floor. The police collected the items as evidence. The victim underwent a sexual assault examination that morning. Photographs taken at that time showed bruising to her face. The victim later identified [Petitioner] from a photographic array. DNA testing of the victim's pajamas and swabs from [Petitioner] and the victim linked [Petitioner] to the crime.

2

*Rivera v. State*, 26 A.3d 214 (Table), 2011 WL 3074930 (Del. July 25, 2011).[2]

On May 18, 2010, a Delaware Superior Court jury convicted Petitioner of first degree rape, second degree rape (as a lesser-included offense of first degree rape), menacing, third degree assault, endangering the welfare of a child, and two counts of terroristic threatening. (D.I. 13 at 2); *see State v. Rivera*, 2015 WL 4126946, at *1 (Del. Super. Ct. July 9, 2015). The Superior Court sentenced him to eighteen years at Level V, suspended after fifteen years for three years at Level IV, suspended after six months for two years at Level III. *See Rivera*, 2015 WL 4126945, at *1. The Delaware Supreme Court affirmed Petitioner's convictions and sentence on July 25, 2011. *See Rivera*, 2011 WL 3074930, at *3.

On October 22, 2012, Petitioner filed in the Delaware Superior Court a motion for the appointment of counsel to pursue postconviction relief. (D.I. 14-6 at 43) The Superior Court appointed counsel on December 11, 2012 ("post-conviction counsel"). On October 22, 2012, post-conviction counsel filed a motion for postconviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion on July 9, 2015, and the Delaware Supreme Court affirmed that decision on March 21, 2016. *See Rivera*, 2015 WL 4126946, at *8; *Rivera v. State*, 135 A.3d 306 (Table), 2016 WL 1165857 (Del. Mar. 21, 2016). Petitioner filed a motion

---

[2]The Court notes that Petitioner's name in the Delaware court decisions ("Rivera") differs from Petitioner's name in this proceeding ("Riveria"). The instant case is captioned consistently with the name Petitioner included on his form habeas application: Efrain Riveria. (D.I. 1 at 1) In contrast, the Delaware courts and, therefore, their decisions, refer to Petitioner as Efrain Rivera. (*See, e.g.*, D.I. 14-1 at 1)

3

for modification of sentence on January 28, 2019, which the Superior Court denied on March 28, 2019. (D.I. 14-1 at Entry Nos. 78, 79)

In February 2019, Petitioner filed the instant Petition asserting the following four grounds for relief: (1) the trial judge denied him access to cell tower records and improperly admitted "tainted and mishandled" DNA evidence (D.I. 3 at 19); (2) he did not rape the victim, because any sexual contact was consensual and part of an ongoing affair between him and the victim (D.I. 3 at 14); (3) defense counsel provided ineffective assistance by failing to make challenges and necessary objections (D.I. 1 at 7); and (4) the State prosecuted him because it "needed a scape goat" and "thought a Hispanic would just take it."[3] (D.I. 1 at 8)

## II.    ONE-YEAR STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners that begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[3]Petitioner also asks to be "compensated for [his] unlawful incarceration" in the amount of $500,000. (D.I. 1 at 15; D.I. 1-2 at 1) Such relief is not available on federal habeas review. *See Muhammed v. Close*, 540 U.S. 749, 750 (2004).

4

>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. See Holland v. Florida, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner does not assert, and the Court does not discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). Consequently, the one-year period of limitations began to run when Petitioner's convictions became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. See Kapral v. United States, 166 F.3d 565, 575, 578 (3d Cir. 1999); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's conviction on July 25, 2011, and he did not seek review by the United States Supreme Court. As a result, his judgment of conviction became final on October 24, 2011. Applying the one-year limitations period to that date, Petitioner had until October 24, 2012 to timely file a habeas petition. See Wilson v. Beard, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to

5

AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until February 11, 2019,[4] more than six years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence. *See Jones,* 195 F.3d at 158; *see Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) (explaining that actual innocence is an "exception to the statute of limitations" rather than an "extension to the statute of limitations via equitable tolling.") The Court will discuss each doctrine in turn.

## A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). A post-conviction motion is "'properly filed' for statutory tolling purposes when its delivery and acceptance is in compliance with the state's applicable laws and rules governing filings, such as the form of the document, any time

---

[4]Pursuant to the prison mailbox rule, the Court adopts as the filing date the date on which Petitioner provided the Petition to prison authorities to be electronically filed: February 11, 2019. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

6

limits upon its delivery, the location of the filing, and the requisite filing fee." *Crump v. Phelps*, 572 F. Sup. 2d 480, 483 (D. Del. 2008). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *See Swartz,* 204 F.3d at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Petitioner's Rule 61 motion, filed on September 2, 2014, has no statutory tolling effect because it was filed after the expiration of the limitations period. Thus, the Petition is time-barred, unless equitable tolling applies.

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. Additionally, the obligation to act diligently "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged

7

to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will warrant equitable tolling only 1if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Petitioner does not assert that any extraordinary circumstance prevented him from complying with AEDPA's one-year statute of limitations. Nevertheless, the Court discerns a particular situation that occurred during Petitioner's Rule 61 proceeding that may be viewed as an extraordinary circumstance. On October 22, 2012, Petitioner filed a motion in the Superior Court seeking the appointment of counsel to pursue Rule 61 relief. The Superior Court appointed counsel in December 2012, but counsel did not file a Rule 61 motion until September 2, 2014. The issue is whether the time from October 22, 2012 through September 2, 2014 should be equitably tolled. Since the result is the same, the Court summarily presumes that the motion to appoint counsel should be viewed as triggering equitable tolling. In this scenario, when Petitioner filed his motion to appoint counsel on October 22, 2012, 363 days of the one-year limitations period had already expired. The limitations period remained tolled through March 21, 2016, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's Rule 61 motion. Since there were only two days left in the one-year filing deadline, Petitioner's filing in 2019 was clearly too late. Therefore, even with any possible equitable tolling, the Petition is time-barred.

8

### C. Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S 383, 392 (2013); *Wallace*, 2 F. 4th at 150-151. A petitioner satisfies the actual innocence exception by (1) presenting new, reliable evidence of his innocence, and (2) showing "by a preponderance of the evidence" that "a reasonable juror would have reasonable doubt about his guilt[] in light of the new evidence." *Wallace*, 2 F.4th at 151.

Petitioner contends he is actually innocent because he and the victim were romantically involved, and her "cries of rape" were an attempt to hide her infidelity. (D.I. 3 at 7) The Superior Court rejected the same argument in Petitioner's Rule 61 motion because Petitioner's description of the relationship as a consensual romance was inconsistent with the evidence. *See Rivera*, 2015 WL 4126946, at *1-2. In this proceeding, Petitioner has not provided any new reliable evidence of his actual innocence, nor has he provided anything to rebut or even cast doubt on the Superior Court's findings. Thus, Petitioner's conclusory and unsupported assertion of innocence based on a consensual affair does satisfy the actual innocence standard.

Accordingly, the Court will dismiss the instant Petitioner as time-barred.[5]

### III.  CERTIFICATE OF APPEALABILITY

---

[5]Having determined that the Petition is time-barred, the Court will not address the State's alternate reasons for dismissing the Petition.

9

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability may be issued only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that Petitioner's habeas Petition must be dismissed as time-barred. Reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims to be debatable or wrong. Consequently, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the instant Petition as time-barred. An appropriate Order will be entered.